UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALEXANDRIA MILLAN, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | 5:21-CV-00659-JKP-HJB |
| | § | |
| BEXAR COUNTY, TEXAS, | § | |
| | § | |
| *Defendant* | § | |

## PLAINTIFF'S FIRST AMENDED PETITION

**TO THE HONORABLE JUDGE OF SAID COURT**

**NOW COMES** ALEXANDRIA G. MILLAN, ("hereinafter called Plaintiff"), by and through her undersigned attorneys of record, and, in accordance with the Federal Rules of Civil Procedure, and Texas Rules of Civil Procedure files this, her Original Petition, against and complaining of and about BEXAR COUNTY GOVERNMENT (hereinafter called "Defendant or Bexar County"), and for cause of action show unto the Court the following:

## I.

### DISCOVER CONTROL PLAN

1.      Plaintiff intends to conduct discovery under Level 3, pursuant to Rule 190.4 for the Texas Rules of Civil Procedure.

## II.

### SUMMARY

2.      On or about November 1, 2019, Plaintiff filed an U.S. Equal Employment Opportunity Commission (hereinafter, "EEOC") <u>Charge of Discrimination</u> against Bexar County—Government of Bexar County, Texas for suffered discrimination on the basis of retaliation under the Title VII of the Civil Rights Act of 1964. Defendant, BEXAR COUNTY, also performed discriminatory practices under the Texas Labor Code violations of National Origin, Race and retaliation. Moreover, Defendant, BEXAR COUNTY, violated Plaintiff's Due Process and Equal Protection as a County Employee. Plaintiff is protected by Texas Civil Service Rules and Statutes as well as employment rules, policies, procedures, and employment guidelines promulgated by Bexar County Texas.

## III.

### PARTIES

3.      Plaintiff, ALEXANDRIA G. MILLAN, is an individual, that is citizen of the State of Texas.

4.      Defendant, Bexar County—Government of Bexar County, Texas, a county in Texas, may be served with process by serving the County Judge, The Honorable Nelson Wolff, at 100 Dolorosa, San Antonio, TX 78205, under the authority of Texas Civil Practice & Remedies Code section 17.024(a).

## IV.

### Jurisdiction And Venue

5.    Plaintiff asserts claims against Defendant for violations of the Texas Labor Code, thereby invoking the jurisdiction of this Court.

6.    On or about November 1, 2019, and within 180 days after Defendant removed her from the position, Plaintiff, Ms. ALEXANDRIA G. MILLAN timely filed a Charge of Discrimination against Defendant with the appropriate administrative agencies, including the United States Equal Employment Opportunity Commission and the Civil Rights Division of the Texas Workforce Commission (hereinafter "TWC"), identified as charge number 451-2020-00336 and again for retaliation identified in charge number 451-2020-00595 against Defendant with the appropriate administrative agencies, including the United States Equal Employment Opportunity Commission and the Civil Rights Division of the Texas Workforce Commission. *See* Exhibit No. 1.[1]

7.    On or about April 1, 2021, Plaintiff received a Notice of Right to File a Civil Action (hereinafter "Notice") from the EEOC and TWC. See, Exhibit No. 2

8.    By filing a Charge of Discrimination, receiving her Notice, and filing suit within 60 days of receiving her Notice, Plaintiff has complied with all conditions precedent and exhausted all applicable administrative remedies required by the Texas Labor Code prior to filing suit.

---

[1] See Exhibit No. 1, Charge of Discrimination to include the EEOC Form 5 (11/09), annexed hereto and incorporated by reference as if fully set forth herein.

Alexandria Millan v. Bexar County, Texas

9.    The Federal Court additionally has subject matter jurisdiction under 28 U.S.C. § 1331 because this civil action arises under the Constitution, laws, or treaties of the United States; specifically, Title VI of the Civil Rights Act of 1964 and said pleading is filed within the requisite 90 days.

10.    Venue is alternatively proper in the Western District of Texas, San Antonio Division, pursuant to 28 U.S.C. § 1391(b), or concurrent jurisdiction with Bexar County District Court because a substantial part of the events or omissions giving rise to the claims herein occurred in this District and Venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3) because the alleged unlawful employment practice was committed in this state.

## V.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

11.    Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission. Plaintiff files this complaint within 60 days after receiving a notice of the right to sue from the EEOC which was simultaneously filed with the Texas Workforce Commission Civil Rights. A copy of the notice of the right to sue is attached as Exhibit "No.2"[2].

## VI.

### FACTS / FACTUAL ALLEGATIONS

---

[2] See Exhibit No. 2, Notice of Right to Sue Letter, annexed hereto and incorporated by reference as if fully set forth herein.

Alexandria Millan v. Bexar County, Texas
Plaintiff's First Amended Pleading                    Page **4** of **25**

**THE LEGAL THEORIES AND FACTUAL BASIS IN THIS MATTER WHICH ARE
CONTAINED AND INCORPORATED IN THE EEOC FORMAL COMPLAINT AS IF
ATTACHED HEREIN; TO INCLUDE BUT NOT LIMITED TO: CLAIMANT AND ALL
PREVIOUS STATEMENTS, AFFIDAVITS AND DOCUMENTS PROVIDED IN EEOC
CHARGE 451-2020-00336 AND 451-2020-00595 BY OR THROUGH CLAIMANT OR
RESPONDENT.** [3]

12.    Plaintiff, Ms. MILLAN, is an employee within the meaning of Title VII and belongs to a

class protected under the statute, namely an employee subject to the civil service laws of a state

government, governmental agency or political subdivision. Plaintiff's job title as a Budget Analyst

for Bexar County Budget Department. Plaintiff is thirty-one (31) years old, Hispanic American and

currently employed by Bexar County as a Budget Analyst.


13.    Plaintiff filed a complaint of discrimination based on race, national origin, and retaliation

in violation of Title VII of the Civil Rights Act of 1964, as amended.


14.    Plaintiff began working as a Budget Analyst in the Bexar County Budget Department on

March 20, 2017. Prior to accepting this position, Plaintiff was employed by IDEA Public School, a

workplace with a tight-knit environment/culture and high morale. When offered the Budget Analyst

position, Plaintiff accepted the job immediately and looked forward to what she believed would be

an inspired team of public servants in Bexar County Government looking to meet the needs of

---

[3] See Exhibit No. 3, Sworn Affidavit of Alexandria G. Millan, annexed hereto and incorporated by reference as if fully
set forth herein.

Bexar County's unique and diverse citizenry. Plaintiff was neither aware, nor prepared, for the hostile, violent, and aggressive workplace in which she found herself. Plaintiff states,

> *I never thought that I would be stepping into a soul-crushing and demeaning*
> *environment that thrives on causing harm to others. I had never seen this behavior*
> *in previous workplaces. The extent to which I have been subject to bullying,*
> *harassment, and retaliation is unconscionable. Indeed, it got to the level in which*
> *I requested the assistance of the U.S. Equal Employment Opportunity Commission*
> *(EEOC). Instead of dismissing my case, the EEOC granted me the "right to sue";*

15.     Defendant, by and through its employee Mrs. Tina Smith-Dean, the Assistant County Manager, has caused an environment of bullying, intimidation, harassment, defamation, and retaliation because Plaintiff exposed the truth about her to the EEOC, the Honorable Justin Rodriguez, the Honorable Tommy Calvert, the Honorable Rebeca Clay-Flores, and the Kelmar Global investigators. Mrs. Smith-Dean is second in command to County Manager David Smith, who is responsible for overseeing the Bexar County Budget, which is in excess of ONE BILLION, EIGHT HUNDRED MILLION DOLLARS ($1,800,000,000.00) as stated in FY 21-22 Adopted Budget. Plaintiff's duties were to oversee expenditures for her assigned departments. Plaintiff on occasion began to question some expenditures which led to Mrs. Smith-Dean's bullying, intimidation, harassment, and retaliation.


16.     First, Mrs. Smith-Dean wrote Plaintiff up for not inputting the Navistar budget transfer of FOUR HUNDRED AND TWENTY-THREE THOUSAND THREE HUNDRED AND FIFTY-TWO DOLLARS ($423,352.00). The reason Plaintiff hesitated in doing so was because of some

ethical considerations that she had regarding a land purchase with public dollars. It did not make sense to move public funds from a non-departmental, undesignated fund to the Community Infrastructure and Economic Development (CIED) Fund. To date, Bexar County has still not been invoiced for costs related to Navistar. The evidence would suggest that this budget transfer was a way to "slush up" the CIED Fund due to its lack of carrying forward a fund balance. Customarily, it is fully funded from the General Fund every fiscal year by an inter-fund transfer which ranges from $800,000 to $1.2 million. At the time of Commissioners Court on November 5, 2019, Navistar had yet to purchase the land. In fact, when Navistar did make a purchase, it was only a fraction of the land and cost.

17.    Another time Mrs. Smith-Dean "reassigned Plaintiff" with her authorizing signature on Plaintiff's status form on May 25, 2020, to the Purchasing Department to report directly to Ms. Patricia Torres, the Bexar County Purchasing Agent. On June 9, 2020, she took her retaliation one step further. Specifically, regarding her adverse employment actions, she delimited Plaintiff's Budget Analyst position in the Budget Department, according to Ms. Ana Bernal, Human Resources Operations Manager.

18.    On or about June 9, 2020 at the same time that Plaintiff's position was being adversely delimited, Ms. Sylvia Diaz, Senior Analyst-Compliance, and Ms. Pearl Jauregui, Risk Claims Specialist, were both given an 8% salary increase and moved up two pay grades. Moreover, Mrs. Nancy McClure-Soto, the former Administrative Services Coordinator to Mrs. Smith-Dean, was given a proposed termination, all while she had an active EEOC charge for retaliation due to or in

conjunction with assisting Plaintiff with filing her own EEOC charges. Less than three (3) weeks later, on June 25, 2020, Plaintiff's Budget Analyst position in the Budget Department was deleted entirely, suggesting that Mrs. Smith-Dean's plan was to ensure that Plaintiff never returned to the Budget Department.

19.    Plaintiff was placed in a position to track all COVID-19 expenditures for the County; however, the Auditor's Office has been tracking all COVID-19 expenditures since the start of the pandemic and even has one staff person assigned to this task full-time leaving Plaintiff in a position that is unnecessary, and duplicative at best.

20.    Plaintiff claims that Mrs. Smith-Dean has a pattern of using other individuals to do her "dirty work." For example, Mrs. Smith-Dean used Ms. Tanya Gaitan, Budget Manager, as the only person to complete an affidavit attached to Bexar County's position statement provided to the EEOC for both of Plaintiff's charges on April 6, 2020. The specific tactic used was to have Mrs. Smith-Dean claim that there is no race-based and national origin-based discrimination due to Ms. Gaitan being a "Mexican/Spanish" female and Plaintiff being Cuban/Mexican as shown on Plaintiff's birth certificate. However, Ms. Gaitan has no authority to make any final decisions and is not authorized to sign invoices, payroll, status forms, and/or represent the Budget Office on behalf of Plaintiff's charges.

21.    Mrs. Smith-Dean divides and conquers anyone who questions the necessity or justification of their leadership, no matter how minimal. Ms. Jasmine Leon, now Senior Budget Analyst as of

May 2021, who was being mistreated like Plaintiff, contemplated her own EEOC charge. Not only did she provide the telephone number for the EEOC, she also read Plaintiff's statement and told Plaintiff it was very well written. Even though she had received a written reprimand in the past for poor work ethic, and even though she, along with Ms. Gaitan, would later be caught by an investigative journalist "shooting the finger" at their employer, Ms. Leon later received a salary increase of around $3,000 in late November/early December 2019 after Plaintiff filed her EEOC charge and Ms. Leon did not.

22.     The retaliation was further demonstrated when, on October 30, 2019 at 8:03 a.m., Plaintiff received confirmation from the EEOC that Plaintiff's inquiry had been received. Defendant drafted a write-up for the Plaintiff on October 31, 2019, at 4:38 p.m. This clearly shows that Plaintiff took the action of filing her first charge of discrimination with the EEOC before the Budget Office drafted their write-up for the Plaintiff. Nonetheless, on November 14, 2019, Mrs. Smith-Dean and Ms. Gaitan both came into Plaintiff's office to write her up. When Plaintiff claimed that this was retaliation for filing an EEOC complaint and stated she would contact the EEOC to notify them that she had been written up. Mrs. Tina Dean-Smith smirked and with a cocky tone said, "go on ahead", in a manner indicating she was untouchable and not subject to Bexar County policies, nor state, and federal laws.

23.     Mrs. Smith-Dean routinely violates Bexar County policies to benefit her and her direct reports. For example, Mrs. Smith-Dean was Civil Service protected from July 5, 2012 until September 30, 2020. As an executive, she should have been excluded per Bexar County Civil

Service Policy 7.6.03. Ms. Gaitan continues to be Civil Service protected since August 13, 2013 despite being a manager and classified as an E-11 on the exempt pay table in direct contradiction to Civil Service policy. By way of comparison, Ms. Veronica Guevara, the Risk Management Coordinator is an E-10 and she is excluded from Civil Service protection as well as the Budget Director position which is an E-14. Ms. Gaitan falls between both positions and yet she is protected while others, like Plaintiff, are not. Plaintiff complains of the arbitrary and capricious manner of favoritism, abuse of power, and the differential treatment.

24.     Not once were Ms. Gaitan and/or Ms. Leon placed on Investigative Administrative Leave for "shooting the finger" at the Courthouse and/or Defendant; nor was Mrs. Smith-Dean placed on leave pending the Kelmar Global investigation that was under the direction of the Human Resources Director, Mr. Manuel Gonzalez. No one was "reassigned" to another department and/or completely isolated like Plaintiff was. Mrs. Smith-Dean is responsible for making recommendations to Commissioners Court to add or delete all county positions from this protection under Civil Service (HR/Civil Service report directly to Mrs. Smith-Dean). Once again, Mrs. Smith-Dean used her position and authority to protect herself and those who do her bidding.

25.     Another example of Mrs. Smith-Dean flagrantly violating county policy is when she gave Ms. Gaitan a 17% salary increase in FY 2017-18 Adopted Budget. According to Bexar County Policy 7.2.06, the maximum increase is 8% or the minimum of the new pay grade. Interestingly, Mrs. Smith-Dean has been able to increase her own salary by approximately $65,000 since she became the Assistant County Manager in July 2012. The majority, if not all, of these salary

increases for Mrs. Smith-Dean and Ms. Gaitan were done as out-of-cycle pay increases which normally attract less scrutiny. They are not reflected, for example, in the Proposed Annual Budget presented to Commissioners Court, or in the Adopted Budget Book as a program change for the Budget, County Manager, Human Resource and Management and Finance Department narratives.

26.    Plaintiff's reassignment was made effective on May 22, 2020 due to her being "uniquely qualified" to serve as a Budget Analyst-COVID-19. The evidence would suggest that Mrs. Smith-Dean's true intention was to retaliate against Plaintiff by having her reassigned to a distant County Department where her job duties would be a farce and where she would be isolated.

27.    Plaintiff has been placed in the ark of decay, she states "In the last ten months, Ms. Torres has not once invited Plaintiff to a meeting via Zoom and/or WebEx. In fact, on April 14, 2021, Plaintiff received an email from the Business Relationship Manager, Ms. Carmella Guerrero, stating that she currently has "a WebEx license that [has] never been activated and/or utilized… Therefore, BCIT will be disabling [her] WebEx license to allow for new requests from employees who need it." No other employee of the Purchasing Department or the Budget Department were included on this email. Consistent with her exclusion from day-to-day employment, Plaintiff tried to log into the mandatory cyber security training but was not allowed to. Plaintiff sent an email to the Head of Information Security, Mr. Michael Cheng, in regard to her login issues. He responded and told Plaintiff that her account had not been created in the system.

28.    Additional examples of the "soul crushing and demeaning environment" perpetuated in the Defendant's workplace include:

a. Plaintiff was forced to be subjected to the sexual advances of a Mr. Seth McCabe. Mr. McCabe would inform plaintiff how his wife was a "prude", and she would no longer "go down on" him. He informed plaintiff of the detailed history of his wife's infidelity. Plaintiff was forced to attend a conference with this man against Plaintiff's protest.

b. Mr. McCabe would write "fuck you" on his draft agenda in our agenda meetings and push his paper to Plaintiff so that Plaintiff could see what he wrote. He would also draw a flipping off finger on a hand and push the paper to Plaintiff. Plaintiff was the only person with whom he was doing that. Mr. McCabe would say aloud in the meetings "Alex, stop looking at my paper" which was humiliating for Plaintiff because it was in front of the entire budget and finance team.

c. At Commissioners Court, Mr. McCabe would write on his laptop "stop looking at my computer" then say "Hey Alex look." He made the workplace very hostile and uncomfortable.

d. Mr. McCabe said that Plaintiff should feel lucky to be there. Mr. McCabe told a coworker "Shut the fuck up," in a team meeting. That employee left about two weeks later.

e. Ms. Smith-Dean would tell Plaintiff that "she isn't going to waste taxpayers' dollars on someone who doesn't know how to do her job." When Plaintiff was receiving their written reprimand, Plaintiff told Ms. Smith-Dean that she was going to tell the EEOC about this action and Ms. Smith-Dean said with a cocky tone "go on ahead" as if she were untouchable.

f. Plaintiff walked by Ms. Gaitan's office with Ms. Smith-Dean, they both looked at Plaintiff, laughed, and Ms. Gaitan got up and shut the door.

g. In meetings Ms. Gaitan would say to not "throw [her] under the fucking bus. I don't know how many times I have to say this. You need to own up to your own shit."

h. Plaintiff would hear two Budget Analysts, including a Senior Budget Analyst, say that "If Commissioner Calvert is the voice of reason for the County we are fucked."

i.  Ms. Gaitan would state that she was in fear of a co-worker, who also filed an EEOC complaint, tampering with her food and water bottle. She stated that she did not feel safe leaving food in the breakroom refrigerator or her purse in her office because she thought that Plaintiff or the co-worker would do something.

j.  Ms. Gaitan also stated that she was afraid that Plaintiff was going to beat her up in the parking lot, saying that Plaintiff had fought with a man before.

k.  When the COVID-19 pandemic started, other County Manager Departments were told that they would be working from home the following two weeks. Because Plaintiff had not heard anything from management, Plaintiff sent an email to Ms. Gaitan stating it was brought to Plaintiff's attention that other departments were told they could work from home the next two weeks and Plaintiff was curious to know if we were doing the same. Within minutes, Plaintiff's department was told to go to the conference room. Ms. Gaitan told the department that they were going to be working from home the next two weeks. After that short discussion, Plaintiff heard marching steps coming down the hallway. Ms. Smith-Dean is in Plaintiff's office. With an aggressive tone, she tells Plaintiff that she does not know where Plaintiff is getting her information about other County Manager departments working from home but that the information was wrong. When Plaintiff asked her why she had such an attitude, she backed up into the hallway and proceeded to raise her voice to Plaintiff, telling her to have a great weekend, whipped her hair, and walked back to her office.

l.  In June 2018, Plaintiff's department had an off-campus team building exercise. After they concluded the team building, leadership took the Senior Analysts and Budget Analysts to Twin Peaks – an erotically-charged bar and grill. The majority of the budget analysts, including Ms. Smith-Dean, were drinking alcohol during County working hours while Plaintiff was eight months pregnant.

m. Mr. Thomas Guevara, the Chief of Staff to County Manager David Smith, told Plaintiff that Mr. Smith could not meet with Plaintiff due to her pending EEOC charge. While speaking with Plaintiff, he was grinning as if something Plaintiff had said was funny. He concluded that if Plaintiff has any new complaints or documents to give these to him or tell him about it.

n. Plaintiff was involuntarily reassigned and within minutes had all of her access and equipment taken by the leadership of the Budget and Finance Department. Plaintiff was then isolated in the Purchasing Department where Plaintiff was spoken to by the Purchasing Agent, Ms. Patricia Torres, only a handful of times. Plaintiff's position with the Purchasing Department was then proposed for deletion.

o. For over a year, Plaintiff would turn in a weekly log. This log was never questioned until Ms. Torres was told Plaintiff's position was going to be deleted. Ms. Carmen Leos, the Assistant Purchasing Agent, told Plaintiff in May 2021 that Plaintiff needed to write down every purchase order that Plaintiff looked at and what Plaintiff was doing every thirty minutes. Being that Plaintiff was aware of the proposed deletion, Plaintiff knew that Ms. Torres, Ms. Leos, and Ms. Smith-Dean were trying to justify the deletion of her position. After a year of isolation and inconsequential, non-value-added busy work, Plaintiff gave her two weeks' notice. Ms. Torres refused to sign Plaintiff's two weeks' notice because she said that it was not her decision to have Plaintiff's Budget Analyst-COVID-19 position deleted.

p. Throughout Plaintiff's reassignment to the Purchasing Department, she was not given any equipment or needed access to do what Plaintiff was allegedly assigned to do. She was told by Ms. Torres to read and review the whole CARES Act by her personal cellphone and then Plaintiff was asked to provide a report of it. Because Plaintiff did not have a personal computer, this request was not feasible without the proper equipment. Moreover, the request

was unnecessary given that the Auditor's Office has a full-time staff person assigned to the CARES Act for tracking all COVID-19 expenditures.

q.  When Plaintiff requested her personnel file, not only did Ms. Smith-Dean resist giving it to Plaintiff on December 6, 2019, Plaintiff had to remind her that she missed her own deadline of December 9, 2019. Once Plaintiff brought that to her attention, she came to Plaintiff's office and told Plaintiff that she had Plaintiff's personnel file in the public copier room and that she needed to update something in Plaintiff's file before she gave it to Plaintiff. When Plaintiff later asked Ms. Smith-Dean "What is it that you had to update?" She stated, "your written reprimand." While in the public copier room and while making copies of Plaintiff's personnel file, Ms. Smith-Dean stood next to Plaintiff and towered over her in an intimidating manner. Ms. Smith-Dean watched every move Plaintiff made as Plaintiff copied the contents of her personnel file.

## VI.

## VIOLATIONS OF THE TEXAS LABOR CODE

29.    Whenever Plaintiff pleads that Defendant engaged in any act or omission, she also pleads that Defendant's officers, agents, servants, employees, or representatives, engaged in said act or omission within the course and scope of employment and with the full authorization or ratification of Defendant.

1.    By and through her Original Petition, Ms. Millan pleads a *prima facie* case of gender discrimination and contends:

a.  that she is a female and a protected class member;

b.   that she was qualified for the positions she held;

c.   that she was terminated from a position for which she was otherwise qualified; and

d.   members outside of her protected class were treated more favorably.

2.      By and through her Original Petition, Ms. Millan pleads a *prima facie* case of retaliation and contends:

a.   that she engaged in protected conduct and opposed unlawful conduct;

b.   that she was terminated; and

c.   a causal connection exists between her protected conduct and her termination.

3.      By and through her Original Petition, Mrs. Millan pleads a *prima facie* case of national origin discrimination and contends:

a.   that she is of Cuban decent and a member of a protected class;

b.   that she was qualified for the positions she held;

c.   that she was discharged from positions for which she was otherwise qualified to hold; and

d.   that she was replaced by someone outside the protected class

## VI.

## FACTS OF DEFENDANT'S DISCRIMINATORY ACTIONS TAKEN AGAINST PLAINTIFF UNDER TITLE VII

**PLAINTIFF HAS ATTACHED HERETO THE AFFIDAVIT OF ALEXANDRIA G. MILLAN TO ESTABLISH FACTS THAT ARE NOT CONTAINED IN THE RECORD,**

**WHICH ARE NOT APPARENT IN THE PLEADINGS; THE AFFIDAVIT IS ATTACHED HERETO AS EXHIBIT NO. 3, AND IS INCORPORATED BY REFERENCE THE SAME AS SET FORTH IN FULL.**

30.     Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely an employee subject to the Civil Service laws of a State Government, governmental agency or political subdivision, is of Cuban Decent (National Origin), female. Plaintiff's job title is a Budget Analyst, within the Bexar County Government in the Bexar Budget Department.

31.     Defendant is an employer within the meaning of Title VII, is engaged in an industry affecting commerce, and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. The Defendant has more than five hundred employees.

32.     Mr. David Smith, Mrs. Tina Smith-Dean, Tanya Gaitan, and Seth McCabe, Plaintiff's supervisors are employed by the Defendant as supervisors in the Bexar County Budget Office.

33.     Plaintiff's supervisors are empowered by Defendant to take tangible employment actions against Plaintiff. As senior supervisors, the Defendant's employees exercised supervisory authority over Plaintiff, to include but not limited to 1) the authority to fire Plaintiff, 2) the authority to reassign Plaintiff to a position with significantly different responsibilities, the authority to

significantly alter Plaintiff's benefits. Defendant's employees ultimately did those very things by denying the Plaintiff advancement, reassigning her to lesser positions, and creating a hostile work environment to cause the resignation or termination of Plaintiff.

34.     Defendant intentionally discriminated against Plaintiff because of her race, national origin, and sex in violation of Title VII by Defendant, by taking away Plaintiff's duties, without any corrective or disciplinary written paperwork, and by practicing acts of a discriminatory nature and intended to cause the Plaintiff to be terminated or resign her position rather than continue to face additional harassment and discriminatory practices which leads Plaintiff to claim that her civil service rights were violated. Plaintiff's chain of command failed to abide civil service rules but also county wide guidelines.

35.     Defendant used the following discriminatory employment practices, policies, and rules in violation of Title VII: Plaintiff's chain of command failed to abide not only Defendant's own Human Resources Policy and Procedure but also dismissed other rules for hiring or employment actions. Although these practices, policies, and rules appear to be neutral, they serve to discriminate against a disproportionate number of persons of Plaintiff's race, sex, and national origin, and age.

36.     Defendant and Defendant's employees created a hostile work environment through its discriminatory words and actions towards Plaintiff because of Plaintiff's sex, national origin and race. This conduct was so severe that it altered the terms and conditions of Plaintiff's employment

and interfered with Plaintiff's work performance and thereby created an intimidating, hostile, and offensive work environment.

37.     Defendant is directly liable because it was negligent in discovering and remedying the discriminatory conduct. Defendant intentionally discriminated against Plaintiff because of her race, and sex in violation of Title VII by Defendant, by taking away Plaintiff's duties without any corrective or disciplinary written paperwork. Defendant was discriminatory in nature and intended to cause the Plaintiff to resign or be terminated rather than continue to face additional harassment and discriminatory practices, to which Plaintiff claims her civil service rights were violated.

38.     Defendant is strictly liable for Defendant's employee's discriminatory conduct because Defendant and Defendant's employees took a tangible employment action against Plaintiff that significantly changed Plaintiff's employment status. This ultimately led to Plaintiff being reassigned with significantly different responsibilities and Plaintiff's benefits were significantly changed ultimately desiring Plaintiff to resign or be subject to termination.

39.     Defendant is vicariously liable for Defendant's employee's discriminatory conduct. Defendant did not exercise reasonable care to prevent and promptly correct the discriminatory conduct, even though Plaintiff took advantage of Defendant's measures designed to prevent and correct discriminatory conduct.

      A.     <u>Sex Discrimination</u>

40.    By and through her Amended Complaint and attached affidavit Plaintiff pleads a *prima facie* case of gender discrimination and contends: To establish a prima facie case of gender-based employment discrimination, the Plaintiff must show "(1) she is a member of a protected class; (2) she suffered applied or was eligible for consideration for job opening or position; (3) she was qualified but denied a job, or was discharged from a position; and (4) the position was filled by a person of the opposite gender or remained open and available."

41.    By and through Plaintiff's Affidavit attached hereto this pleading as Exhibit No. 3 the Plaintiff has asserted she is a female, Hispanic, and of Cuban Origin making Plaintiff a protected class. See, Exhibit No. 3;

42.    Plaintiff has asserted that she was qualified for the positions she held, Budget Analyst, within the Bexar County Budget Department and removed from her position. *See* Exhibit No. 3.

B.    Race/Color Discrimination

43.    By and through her Amended Complaint and attached affidavit Petitioner, Ms. Millan pleads a *prima facie* case of race/national origin discrimination and contends: To establish a *prima facie* case of race-based employment discrimination, the Plaintiff must show (1) he or she is a member of a protected class; (2) he or she was qualified for the position; (3) an adverse employment

action occurred; (4) the employer gave preferential treatment to a similarly situated employee who is not in the protected class under nearly identical circumstances.

44.     By and through Plaintiff's Affidavit attached hereto this pleading as Exhibit No. 3 the Plaintiff has asserted, she is a female, Hispanic and of Cuban Origin making Plaintiff a protected class. *See* Exhibit No. 3.

45.     Plaintiff has asserted that she was qualified for the positions she held, Budget Analyst, within the Bexar County Budget Department, demoted from her position, had less training opportunities from her employer Bexar County, Texas. *See* Exhibit No. 3.

46.     Plaintiff has had countless adverse employment action to include being demoted from her position, and she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action. *See* Exhibit No. 3.

47.     Male and other members outside of her protected class were treated more favorably even though they had less seniority were provided and/or issued new or better equipment, more training opportunities and ultimately another member outside of the protected class received the promotion with less seniority and less qualifications. *See*, Exhibit No. 3.

      C.      <u>Retaliation</u>

48.     By and through her Amended Petition, Plaintiff pleads a *prima facie* case of retaliation and contends (1) that she engaged in protected conduct and opposed unlawful conduct; (2) that she was illegally investigated and her duties altered; and (3) causal connection exists between her protected conduct and her demotion of duties and lack of promotion and eventual demotion.

49.     Plaintiff has asserted that she was qualified for the positions she held as an Budget Analyst within the Bexar County Budget Department, she was demoted from her position within Bexar County, Texas. *See* Exhibit No. 3.

50.     Plaintiff has had countless adverse employment action to include she was demoted from a position she was otherwise qualified; and she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action. *See* Exhibit No.

51.     Male and other members outside of her protected class were treated more favorably even though they had less seniority were provided and issued new or better equipment, more training opportunities and ultimately another member outside of the protected class received the promotion with less seniority and less qualifications. *See* Exhibit No. 3.

       D.     <u>Hostile Work Environment</u>

52.    Bexar County created a hostile work environment in its words and actions of a supervisor, manager or coworker which negatively or severely impacted the Plaintiff's work ability to complete her work. In order to establish a hostile work-environment claim, a Plaintiff must prove five elements: (1) the employee belonged to a protected class; (2) the employee was subject to unwelcome harassment; (3) the harassment was based on [the protected class]; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Shepherd v. Comptroller of Pub. Accounts of Tex.*, 168 F.3d 871, 873 (5th Cir. 1999). Here, in this cause, Plaintiff is a woman, and her age is thirty-one years old. The Plaintiff was subject to unwelcome harassment at the hands of Mr. David Smith, Mrs. Tina Smith-Dean, Mr. Seth McCabe, Tanya Gaitan and Patricia Torres. The harassment caused her demotion. The employer knew of the discriminatory action but failed to take action.

# X.

## DAMAGES

53.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered the following injuries and damages.

    a. Plaintiff was demoted and denigrated as a Budget Analyst resulting in lost promotions and other growth opportunities;

    b. Plaintiff suffered loss of her pension or retirement benefits;

    c. Reasonable attorney's fees, costs and expenses of this action, including expert

witness costs;

   d. Pre-judgment and post-judgment interest at the highest rates allowed by law;

   e. Plaintiff seeks damages in an amount that is within jurisdictional limits of court; and

   f. Such other and further relief, at law or in equity, as this Honorable Court may find

   proper.

## XI.

### ATTORNEY FEES AND COSTS

54.    Plaintiff is entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. § 2000e-

5(k).

## XII.

### PRAYER

55.    For these reasons, Plaintiff asks for judgment against Defendant for the following:

   a. affirmative action to hire, reinstate, or promote Plaintiff;

   b. back pay;

   c. front pay;

   d. compensatory damages;

   e. Punitive damages;

   f. prejudgment interest on lost wages and benefits and post judgment interest on all

sums, including attorney fees;

   g. for reasonable attorney fees;

h. Costs of suit;

i. All other relief the Court deems appropriate.

Respectfully submitted,

THE JAKOB LAW FIRM, P.C.
TETCO CENTER
1100 N E Loop 410, Suite 200
San Antonio, Texas 78209
Tel.: (210) 226-4500
Fax: (210) 226-4502
Email: JJJ@diazjakob.com

By: _____

**JASON J. JAKOB**
State Bar No.: 24042933
Attorney for Plaintiff,
ALEXANDRIA G. MILLAN

PLAINTIFF REQUESTS TRIAL BY JURY