UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

ALEXANDRIA MILLAN,

      Plaintiff,

v.                                 Case No. SA-21-CV-0659-JKP-HJB

BEXAR COUNTY, TEXAS,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion to dismiss filed by Defendant Bexar County (ECF No. 25). Plaintiff filed a response (ECF No. 28). The time to file a reply has expired and the motion is ripe for ruling. For the reasons set forth below, the Court partially grants the motion.

## I. BACKGROUND

Plaintiff Alexandria Millan was a Budget Analyst with the Bexar County Budget Department where she was employed from March 2017 through May 2021. ECF No. 23 at 5, 14.[1] On June 1, 2021, Plaintiff filed a Texas state court petition. ECF No. 1-2. Defendant timely removed the case to federal court. After six motions for extensions of time to answer Plaintiff's complaint, Defendant filed a motion to dismiss on September 10, 2021. ECF No. 18. In response, Plaintiff amended her complaint, which is now the live pleading in this case. ECF No. 23. The amended complaint brings causes of action under Title VII and the Texas Labor Code for (a) sex discrimination; (b) race and national origin discrimination; (c) retaliation; and (d) hostile work

---

[1] The pleading and briefing do not make clear whether Plaintiff was terminated, resigned, or still works for Bexar County. The amended complaint alleges that in May 2021, "aware of the proposed deletion [of her job], Plaintiff . . . gave her two weeks' notice. Ms. Torres refused to sign Plaintiff's two weeks' notice because she said that it was not her decision to have Plaintiff's Budget Analyst-COVID-19 position deleted." ECF No. 23 at 14. There are no other allegations or contentions in the amended complaint or the briefing that assist the Court in knowing when Plaintiff's employment ended or if she continues to be employed by Bexar County.

1

environment. ECF No. 23 at 15-16, 19-21.

After an extension of time to respond to the amended complaint, Defendant filed the pending motion to dismiss, which the Court accepted as timely filed on October 29, 2021. ECF No. 25. After an extension of time to respond, Plaintiff filed a response on November 19, 2021. ECF No. 28. Plaintiff's response contends she has pled sufficient facts to state viable claims for (a) sex discrimination and "subjection to a hostile work environment" based on the allegations that support her sex discrimination claim; (b) race and national origin discrimination; and (c) retaliation. ECF No. 28 at 3, 5, 8.

The time to reply expired on November 26, 2021. The motion is therefore briefed and ripe for ruling. Defendant moves to dismiss any sex or age discrimination claims for failure to exhaust administrative remedies, contending these claims did not grow out of Plaintiff's EEOC complaints, and her race and national origin discrimination and retaliation claims for failure to state a claim.

## II. LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), litigants may move to dismiss asserted claims for "failure to state a claim for which relief can be granted." As required by Fed. R. Civ. P. 8(a)(2), every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a plaintiff need not plead the legal basis for a claim, the plaintiff must allege "simply, concisely, and directly events" that are sufficient to inform the defendants of the "factual basis" of a claim. *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014).

In general, a court addressing a motion under Rule 12(b)(6) "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted). Furthermore, when ruling on a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor." *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *Id.* at 563 n.8. Nevertheless, plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Facts alleged in a pleading must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. As *Twombly* states, to avoid dismissal under Rule 12(b)(6), plaintiffs must allege facts that "nudge" an asserted claim "across the line from conceivable to plausible." 550 U.S. at 570. Where

a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citations omitted).

### III. FACTS ALLEGED

As an initial matter, the Court notes that Plaintiff's factual allegations are presented in a format that is at best difficult to follow and at worst, chaotic. Additionally, the Court observes that Defendant attached to the motion to dismiss evidence that appears to be an attempt to prove its arguments on the merits. The existence of such evidence and the inference that a record was developed through an EEOC investigation indicates that Defendant's arguments could have been presented in a motion for summary judgment, thereby deploying resources more efficiently.

Accepted as true and construed in the light most favorable to her, Plaintiff alleges the following. ECF Nos. 1-2; 23. Plaintiff began working as a Budget Analyst in the Bexar County Budget Department on March 20, 2017. ECF No. 23 at 5. Plaintiff's duties were to oversee expenditures for her assigned departments. *Id.* at 6. Tina Smith-Dean is the Assistant County Manager, second in command to the County Manager, who is responsible for overseeing the Bexar County Budget. Tanya Gaitan is a Budget Manager for Bexar County. Patricia Torres is the Purchasing Agent for the Purchasing Department. *Id.* at 6, 8, 14.

Plaintiff alleges that in June and July 2019, she was required to clock in and out even though she was an exempt, salaried employee. ECF No. 1-2 at 26. She was told she would have to clock in and out until she demonstrated she could get to the office by 8:00 a.m. every day. *Id.* She further alleges that similarly situated "white/Caucasians" and "a black/Puerto Rican" also arrived late but were not required to clock in and out. *Id.* Additionally, a "black/Puerto Rican" comparator,

who had attendance and discipline issues, was allowed to attend a training that Plaintiff was denied on the basis that she had been arriving late. *Id.* at 27.

Plaintiff also questioned some expenditures. For instance, she had "ethical considerations regarding a land purchase with public dollars" and hesitated to input the budget transfer for the purchase. After Smith-Dean wrote-up Plaintiff for not inputting that budget transfer, Plaintiff decided to file an EEOC charge for retaliation. ECF No. 23 at 6-7.

On October 30, 2019, at 8:03 a.m., Plaintiff received confirmation from the EEOC that her inquiry had been received. At 4:38 p.m. on October 31, 2019, Smith-Dean drafted another write-up on Plaintiff. On November 1, 2019, Plaintiff filed her first EEOC complaint. On November 14, 2019, Smith-Dean and Gaitan both came into Plaintiff's office to write her up. When Plaintiff claimed that this was retaliation for filing an EEOC complaint and stated she would contact the EEOC to notify them that she had been written up, Smith-Dean responded in a way that led Plaintiff to believe Smith-Dean was confident that Smith-Dean "was untouchable." *Id.* at 9. Plaintiff thereafter filed her second EEOC complaint.

On May 25, 2020, Smith-Dean reassigned Plaintiff to the Purchasing Department, where Plaintiff reported to the Bexar County Purchasing Agent. Plaintiff was placed in a position to track all COVID-19 expenditures for the County; however, the Auditor's Office had been tracking all COVID-19 expenditures since the start of the pandemic and even had one staff person assigned to this task full-time leaving Plaintiff in a position that was unnecessary and duplicative. *Id.* at 7-8. Plaintiff likens this assignment to being "placed in the ark of decay" because during her reassignment to Purchasing she was not included in any departmental meetings, was excluded from training, and was ignored by Torres, who spoke to Plaintiff "only a handful of times" in the year Plaintiff spent in the position. *Id.* at 11, 14. Additionally, throughout Plaintiff's reassignment to the

Purchasing Department, she was not provided any equipment or the access she needed to complete her assignments. For example, Torres told her to "read and review the whole CARES Act" on Plaintiff's "personal cellphone" and provide a report. And upon her reassignment to Purchasing, an IT account was never created for her, preventing her from completing mandatory cyber security training. *Id.* at 11, 14-15.

On June 9, 2020, Smith-Dean delimited Plaintiff's former position in the Budget Department. That same day, Smith-Dean gave two other employees salary and pay grade increases and proposed to terminate another employee who also had an active EEOC charge for retaliation. *Id.* at 10. On June 25, 2020, Smith-Dean deleted Plaintiff's former Budget Analyst position, making it impossible for Plaintiff to return to the position. *Id.* at 7-8.

Plaintiff alleges that while in Purchasing, she turned in a weekly log for over a year that was never questioned. Then, in May 2021, Torres told Plaintiff she needed to write down every purchase order Plaintiff looked at and what Plaintiff was doing every thirty minutes. Plaintiff asserts Torres and Smith-Dean concocted this requirement to justify the deletion of her position in Purchasing. *Id.* at 14.

Plaintiff believes she was intentionally isolated in an effort to see her resign because there were no grounds to terminate her. *Id.* at 17-18. Alternatively, by isolating Plaintiff and blocking her access to mandatory training, Bexar County would essentially force an error that provided grounds to terminate her. *Id.* Ultimately, the strategy worked, because "[a]fter a year of isolation and inconsequential, non-value-added busy work, Plaintiff gave her two weeks' notice" but Torres "refused to sign Plaintiff's two weeks' notice because she said that it was not her decision to have Plaintiff's Budget Analyst-COVID-19 position deleted." *Id.* at 14.

Plaintiff contends that Smith-Dean had Gaitan attest to Bexar County's EEOC response to avoid any appearance of race or national origin discrimination because Gaitan is a "Mexican/Spanish" female. *Id.* at 8. Plaintiff further contends that Smith-Dean rewards employees who do her "bidding" with salary increases, while demoting or reassigning anyone who questions or challenges her. *Id.* Even if the employee is a poor performer, violates policy, or has been written up, so long as the employee does Smith-Dean's bidding, she will be rewarded. *Id.* at 8-9. Plaintiff alleges Smith-Dean's reward-system goes undetected because she gives the pay increases "out-of-cycle" when they "attract less scrutiny" because out of cycle pay increases are not reflected in the Proposed Annual Budget or in the Adopted Budget Book. *Id.* at 10-11.

## IV. DISCUSSION

### A. Documents Attached to the Amended Complaint and Motion

"The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Id.* (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)). "A document is central to a claim when it is 'necessary to establish an element' of the claim." *Pylant v. Cuba*, No. 3:14-CV-0745-P, 2015 U.S. Dist. LEXIS 189656, 2015 WL 12753669, at *2 (N.D. Tex. Mar. 6, 2015) (quoting *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011)). However, "if the operative pleading references a document that 'is merely evidence of an element' of a claim, the courts do not incorporate it into the pleading." *Id.* (same).

Plaintiff attached to her complaint: her November 1, 2019 EEOC Charge; a letter from the EEOC San Antonio Field Office dated December 27, 2019; and her affidavit, sworn May 31, 2021. ECF No. 1-2. Plaintiff incorporated these attachments in her amended complaint. ECF No. 23 at 3-5. Accordingly, the Court considers these documents in the discussion below.

Defendant attached to its motion to dismiss: Plaintiff's November 18, 2019 EEOC Charge; a letter from the EEOC San Antonio field office dated April 1, 2021; an EEOC Dismissal and Notice of Rights mailed April 9, 2021; an EEOC Dismissal and Notice of Rights mailed April 11, 2021; a written reprimand dated November 14, 2019; emails; and performance reviews dated September 20, 2017 and September 19, 2019. ECF No. 25-1. Such attachments prompt "an obvious threshold question that often arises" in the context of a motion to dismiss, i.e., whether the attachment constitutes a matter "outside the pleadings" for purposes of Fed. R. Civ. P. 12(d). *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 785 (5th Cir. 2007). Rule 12(d) provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

If the Court concludes that the attachment is a matter outside the pleadings and does not exclude it, Rule 12(d) mandates that the Court treat the motion to dismiss as one for summary judgment. But the decision to accept or reject a proffered matter outside the pleadings is within the court's "complete discretion." *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193-94 & n.3 (5th Cir. 1988).

The attached EEOC documents are referenced in Plaintiff's amended complaint and are central to her claims. Therefore, the Court considers these attachments in the discussion below. Specifically, the EEOC documents are necessary to the Court's analysis of Defendant's contention

that several of Plaintiff's claims are subject to dismissal for failure to exhaust administrative remedies.

The written reprimand, emails, and performance reviews challenge the veracity of the allegations in the complaint rather than "assist[ing] the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins*, 224 F.3d at 499.[2] While Plaintiff did not object to their inclusion, for the reasons discussed below, the Court exercises its discretion to exclude them.[3]

First, the written reprimand is referenced in the amended complaint but only the existence and the date of the reprimand is central to Plaintiff's claim; the substance of the reprimand is not necessary to the determination of whether Plaintiff makes a prima facie case or plausibly alleges her claims. Therefore, the Court exercises its discretion to exclude the substance of the reprimand. *See Lone Star Fund V (U.S.), L.P.*, 594 F.3d at 387 (attachments to a motion to dismiss must be both "central to the claim and referenced by the complaint"). Second, the emails are not referenced in the amended complaint, therefore, the Court exercises its discretion to exclude the emails. *Id.* (same).

Third, Plaintiff references her job performance generally in the amended complaint; she does not identify a specific performance review.[4] Such a high-level reference to the subject matter

---

[2] Precedent firmly establishes that when analyzing a motion to dismiss, courts accept the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Attachments that challenge the veracity of the factual allegations in the complaint are therefore better suited to summary judgment, when the parties are permitted to attach evidence that supports their arguments.

[3] *Cf. Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (highlighting that the absence of any objection to "the district court's consideration of those documents was central to [its] approval of that practice") (citing *Collins*, 224 F.3d at 498-99); *Walch v. Adjutant Gen's Dep't of Tex.*, 533 F.3d 289, 294 (5th Cir. 2008) (noting an absence of any question as to the authenticity of the relied-upon documents).

[4] Plaintiff alleges that "she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action." ECF No. 23 at 21, 22.

of a document appears insufficient to allow the Court to consider the attachment without converting the motion to dismiss to a motion for summary judgment. Since the Fifth Circuit initially approved the practice of considering matters attached to a motion to dismiss in *Collins*, Fifth Circuit precedent clearly, unambiguously, and unyieldingly requires a reference to the document within the pleading. *See*, *e.g.*, *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019); *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766-67 (5th Cir. 2016); *Taylor v. City of Shreveport*, 798 F.3d 276, 279 & n.4 (5th Cir. 2015); *Lone Star Fund V (U.S.), L.P.*, 594 F.3d at 387; *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *Collins*, 224 F.3d at 498-99.

Even if the Court accepts that the amended complaint makes an implicit reference to Plaintiff's performance reviews, the argument for accepting an implicit reference essentially rewrites the circumstances in which courts may permissibly consider an attachment to a motion to dismiss without converting the motion to one for summary judgment. Accepting an implicit reference as sufficient effectively eliminates the reference requirement thus leaving only the requirement that the document be central to a claim. This Court will not extend *Collins* and its progeny to implicit references to documents.

## B. Motion to Dismiss

The burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), governs claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and the Texas Labor Code, Tex. Lab. Code § 21.051. *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 466 (5th Cir. 2021). Under McDonnell Douglas, the plaintiff must first establish the prima facie case for the claim alleged. *Texas Dept. of Community Affairs v. Burdine*, 50 U.S. 248, 252–53 (1981). If the prima facie case is made, the defendant bears a burden of

production to articulate a legitimate, nondiscriminatory or nonretaliatory reason for the adverse employment action. *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 395 (5th Cir. 2002). If the defendant meets this burden, the burden shifts back to the plaintiff who may prove discrimination or retaliation by offering evidence that the defendant's stated reason is pretextual. *Id.*

Defendant moves to dismiss any claims for sex discrimination, age discrimination, hostile work environment, or constructive discharge because these claims were not "raised in either EEOC Charge." ECF No. 25 at 3. Defendant argues that these claims are barred for failure to exhaust administrative remedies. Plaintiff contends her "subsequent complaints of discrimination and subjection to a hostile work environment and constructive discharge due to gender all stem from her initial complaint with the EEOC." ECF No. 28 at 3-4. She argues that Defendant was on notice of these claims and they should be allowed to proceed.

While Title VII requires employees to exhaust administrative remedies before seeking judicial relief, the "exhaustion requirement is not a jurisdictional bar to suit but rather a prudential prerequisite." *Davis v. Fort Bend Cty.*, 893 F.3d 300, 308 (5th Cir. 2018) *affirmed* 139 S. Ct. 1843, 1846 (2019). Failure to exhaust must be raised "in a timely manner before the district court." *Id.* Defendant raised Plaintiff's failure to exhaust in its first motion to dismiss. ECF No. 18. Because Defendant's first motion to dismiss was its first responsive pleading, the Court finds Defendant raised the issue in a timely manner.

A claim that exceeds the allegations of an EEOC complaint and the investigation that grows from it, may be denied for failure to exhaust. When considering whether a claim should be denied in this circumstance, courts construe the "EEOC complaint broadly but in terms of the administrative EEOC investigation that 'can reasonably be expected to grow out of the charge of discrimination'" using a "fact-intensive analysis . . . that looks beyond the four corners of the

document to its substance." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). "In

sum, a Title VII lawsuit may include allegations like or related to allegations contained in the

EEOC charge and growing out of such allegations during the pendency of the case before the

Commission." *Id.* (cleaned up).

On November 1, 2019, Plaintiff submitted a charge of discrimination to the EEOC. The

particulars of this complaint read in full:

> I am currently employed with the above employer. During my employment in June-
> July 2019, I have been required as [an] exempt, salaried employee to clock in and
> out. I was informed that if I do not [arrive at] the office by 8:00 [a.m.], then I will
> continue to clock in and out. However, white/Caucasians and a black/Puerto Rican,
> who are similarly situated are allowed to come in late as I do, and are not required
> to clock in and out. I have asked Management since I live further away and am a
> single mother, to allow me to change my work schedule, but I have been denied.
>
> In September 2019, when I had my evaluation, I opposed the decision to mark me
> lower based on my attendance and performance. I was sternly told to the point of
> bullying from my management that when he was younger, he had the same type of
> evaluation and that I needed basically to get over it. During that same evaluation, I
> was informed that I would no longer be authorized to attend a training that had been
> previously approved because of the evaluation. This along with the evaluation
> prevents me from promotion, pay raise and training to assist me in being more
> proficient in my job. However, there is a black/Puerto Rican comparator, who has
> discipline issues and has attendance issues but she was allowed to attend the same
> training I was denied.
>
> I believe that I have been discriminated against based on my race (white) and origin
> (Cuban) in violation of Title VII of the Civil Rights Act of 1964, as amended.

ECF No. 1-2 at 26-27 (Charge No. 451-2020-00336). The particulars of Plaintiff's second charge

to the EEOC, made November 18, 2019, state:

> I filed an EEOC Charge on November 1, 2019[,] and just two weeks later I received
> my first write up. I am being told I have poor attendance, poor performance and am
> insubordinate, these were not issues that were a problem beforehand.
>
> I believe I have been retaliated against for making a protected complaint to the
> EEOC in violation of Title VII of the Civil Rights Act of 1964, as amended.

ECF No. 25-1 at 4 (Charge No. 451-2020-00595). Correspondence from the San Antonio Field office indicates that Plaintiff may have submitted additional information to the EEOC but no documents dated prior to the letter are attached to Plaintiff's complaint or the briefing. ECF No. 25-1 at 8 (EEOC Letter). Additionally, the briefing makes clear that the EEOC conducted an investigation, but there are no documents that might have been submitted during the pendency of an investigation attached either to the complaint or the briefing. *See* ECF No. 25-1 at 10 (EEOC Dismissal and Notice of Rights).

**1. Age Discrimination**

A plaintiff establishes a prima facie case under the Age Discrimination in Employment Act (ADEA) by showing that she (1) was discharged; (2) was qualified for the position; (3) was within the protected class at the time of discharge; and (4) was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of age. *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004) (citations omitted).

Plaintiff's amended complaint includes a single sentence that notes her age. Plaintiff's response to the motion to dismiss does not address Defendant's argument that any claim brought under the ADEA should be dismissed for failure to exhaust. Consequently, it appears Plaintiff does not intend to pursue an ADEA claim.

Additionally, Plaintiff's EEOC complaints do not allege any discrimination related to her age. And none of Plaintiff's filings in this action indicate that Plaintiff was replaced by someone younger, discharged because of her age, or that she was treated less favorably than any similarly situated younger employee. Accordingly, the Court cannot find that an age discrimination claim would have grown out of the allegations in Plaintiff's EEOC complaint. Therefore, even if the

amended complaint could be construed to allege an age discrimination claim, it is barred for failure to exhaust administrative remedies.

## 2. Sex Discrimination

Plaintiff contends her sex discrimination claim stems from her EEOC complaint because the particulars state that she is a mother. Her first EEOC complaint highlights comparators based on race and national origin, not on sex. Indeed, one of the comparators is identified as "she." The second complaint alleges only that Plaintiff believes she was retaliated against for filing an EEOC Charge. Even if the Court could infer a sex discrimination claim from Plaintiff's reference to being a single mother, the claim would be related to sex stereotyping, such as what has historically been deemed women's work. Specifically, Plaintiff's EEOC complaint alleges that Bexar County refused to adjust her work schedule to accommodate a later arrival, presumably, to give Plaintiff time to get her children to school or daycare.

Plaintiff's amended complaint alleges unwanted "sexual advances" and inappropriate comments; it does not contain allegations of discrimination related to her role as a mother. ECF No. 23 at 12. The sex discrimination allegations in the amended complaint would therefore be unlikely to grow out of investigation into discrimination against Plaintiff based on her role as a single mother who, because of her familial responsibilities, had difficulty arriving at work by the proscribed hour. Thus, the Court cannot find that Plaintiff's EEOC complaints notify Defendant of exposure to the sex discrimination and attendant hostile work environment claims that are alleged in the amended complaint. Consequently, dismissal of Plaintiff's sex discrimination and hostile work environment claims is appropriate.

## 3. Race and National Origin Discrimination

A plaintiff makes a prima facie case of race or national origin discrimination by showing

that she (1) is a member of a protected class; (2) was qualified for the position at issue; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class or treated less favorably than someone outside the protected class. *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 322 (5th Cir.), *cert. denied,* 142 S. Ct. 216 (2021). When disparate treatment is alleged, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead that an "adverse employment action," was taken "*because of* her protected status." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (emphasis in original). An "adverse employment action" affects "job duties, compensation, or benefits" such as "hiring, firing, demoting, promoting, granting leave, and compensating." *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014).

Defendant attacks Plaintiff's prima facie case on the basis that her amended complaint does not allege that she was subject to an adverse employment action. Defendant argues that "reassignment from the Budget Department to the Purchasing Department, and the subsequent deletion of her former position in the Budget Department, . . . do not constitute an adverse employment action." ECF No. 25 at 14. Plaintiff argues that she was demoted and, later, constructively discharged and that her allegations regarding demotion and constructive discharge sufficiently allege an adverse employment action. ECF No. 28 at 4, 8, 11.

Defendant argues that Plaintiff cannot establish constructive discharge because Plaintiff's being told she was lucky to be there; coworkers telling each other to "Shut the fuck up"; comments from her supervisor that Bexar County is not "going to waste taxpayers' dollars on someone who doesn't know how to do her job"; employees using aggressive tones when speaking to one another; supervisors telling employees "you need to own up to your own shit"; and "being falsely accused" or "receiving false reprimands or write ups"; "accusations," "criticism," "sporadic use of abusive

language, gender-related jokes, and occasional teasing" "are examples of workplace interactions which may have been unpleasant to Plaintiff, but are simply part of the trials and tribulations of the everyday work environment." ECF No. 25 at 9-10. After all, "the workplace is not a rose garden" and these types of conduct are not "so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace." *Id.* And none of this conduct would have destroyed the typical Bexar County employee's "ability to succeed in the workplace." *Id.*

Defendant is correct that proving constructive discharge is an extremely "high burden." *El-Hajjami v. United Med. Ctrs.*, No. DR-13-CV-070-AM-CW, 2015 U.S. Dist. LEXIS 193119, at *25, 2015 WL 11545025, at *9 (W.D. Tex. Apr. 1, 2015). Constructive discharge is an involuntary termination of employment; it occurs when working conditions become so intolerable an employee feels compelled to resign. *Young v. Southwestern Sav. & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975) (citations omitted); *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001).

> The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee.

*Young*, 509 F.2d at 144 *accord Haley v. All. Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004).

Courts analyze constructive discharge claims under an objective standard, looking at the facts of each case to answer: "Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004). In determining whether working conditions were intolerable, courts consider specific events, including:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement

16

on terms that would make the employee worse off whether the offer was accepted or not.

*Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994). Accordingly, and under additional Fifth Circuit precedent, demotion or "loss of essential job functions" can serve as an adverse employment action. *See, e.g., Thompson*, 764 F.3d at 503-506 (where plaintiff asserted that "he lost his ability to perform his essential job functions in all investigations, not just on certain projects," he "plausibly alleged" "that his job responsibilities have been significantly diminished" and stated "a plausible claim that he was subject to the equivalent of a demotion").

Defendant next contends that even if demotion could serve as an adverse employment action, Plaintiff's amended complaint does not allege facts that show she was demoted. ECF No. 25 at 14. Plaintiff alleges she was demoted when she was moved from her position as Budget Analyst, which required knowledge of complex budgeting and funding schemes to a position in the Purchasing Department where she tracked a single line item of expenditures and had "so little responsibility that her job was a redundancy." ECF Nos. 23 at 6-7, 21; 28 at 4; 1-2 at 36.

These allegations invite the reasonable inference that Plaintiff's education and skills, acquired and used as a Budget Analyst, were dormant in her position in Purchasing. Plaintiff's allegations that the Purchasing job is in the "ark of decay," that the position was "a farce," and that she felt isolated in the role suggest that the new position was less interesting, provided fewer opportunities for advancement, and was less prestigious. *Id.* at 11; ECF No. 1-2 at 36. She alleges outright that the new position involved significantly diminished material responsibilities by stating that the new position took away her duties and required only "inconsequential, non-value-added busy work." ECF No. 23 at 14, 18.

Viewing the factual allegations in the light most favorable to Plaintiff, the Court concludes that Plaintiff sufficiently alleges that her transfer from Budget Analyst to a position in Purchasing

17

was functionally a demotion. *See Thompson*, 764 F.3d at 505 (a police detective, who alleged "he no longer uses his education and skills that he had acquired and regularly used as a detective, and his new position is less interesting, provides fewer opportunities for advancement, is less prestigious, and involves significantly diminished responsibilities," plausibly alleged "that he was subject to the equivalent of a demotion").

Plaintiff's allegation that she was demoted because of her national origin is supported by her EEOC complaint, which alleges that similarly situated "white/Caucasians" and "a black/Puerto Rican" arrived late to work, as she did, but they were not required to clock in and out and a "black/Puerto Rican" comparator, who had attendance and discipline issues, was allowed to attend a training that Plaintiff was denied on the basis that she had been arriving late. She further alleges that at or about the same time she was demoted, employees outside her protected class were promoted even though they had "less seniority and less qualifications." *Id.* at 21. Whether Plaintiff's "fellow employees were really 'similarly situated'" and whether employees with less seniority and fewer qualification were promoted in her place are questions better "suited to the summary judgment phase." *Cicalese*, 924 F.3d at 768. Accordingly, the allegations that form Plaintiff's race and national origin discrimination claims are sufficient to survive the motion to dismiss.

### 4. Retaliation

A prima facie case of retaliation requires the plaintiff to establish (1) participation "in an activity protected by Title VII"; (2) "an adverse employment action" by the employer; and (3) "a causal connection exists between the protected activity and the adverse employment action." *McCoy*, 492 F.3d at 556-57; *accord Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016). The third element of the prima facie case requires only that the plaintiff

establish "a causal link between the protected activity and [the adverse action]." *Watkins*, 997 F.3d at 284. This "burden of causation" can be met "simply by showing close enough timing between [the] protected activity and [the] adverse employment action." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020), *as revised* (Aug. 14, 2020) (citing *Garcia v. Prof'l Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019)). When determining whether an allegedly retaliatory action is materially adverse, district courts "look to indicia such as whether the action affected 'job title, grade, hours, salary, or benefits' or caused 'a diminution in prestige or change in standing among . . . coworkers.'" *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 826–27 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 160 (2020).

Here, Defendant does not dispute that Plaintiff engaged in protected conduct when she filed her complaints with the EEOC. The only issues are whether Plaintiff has plausibly alleged an adverse employment action and, if so, whether there is a causal relationship between the protected activity and the adverse employment action.

Plaintiff filed her first EEOC complaint on November 1, 2019. She alleges that on November 14, 2019, Smith-Dean and Gaitan both came into Plaintiff's office to write her up and, as a result, Plaintiff filed a second EEOC complaint. On May 25, 2020, Smith-Dean reassigned Plaintiff to the Purchasing Department, which Plaintiff alleges and the Court has accepted, for the purpose of the pending motion to dismiss, was the equivalent of a demotion. On June 9, 2020, Smith-Dean delimited Plaintiff's former position in the Budget Department and on June 25, 2020, Smith-Dean deleted Plaintiff's former Budget Analyst position, making it impossible for Plaintiff to return to the position.

Plaintiff's allegations sufficiently allege an adverse employment action. Her allegations that she was "written up" shortly after she filed her first EEOC complaint and had never before

been written up, paired with her allegations that six months later she was demoted and her previous job was eliminated lend credence to Plaintiff's contention that a causal relationship existed between the protected activity and the adverse employment action. Thus, the Court finds that Plaintiff has made a prima facie case of retaliation. Defendant, in the motion to dismiss, stands on its contention that moving Plaintiff from the Budget Department to Purchasing was not an adverse employment action and offers no non-retaliatory reason for the move. Consequently, this claim shall proceed.

### C. Leave to Amend

Once a Court has found a plaintiff failed to state a claim, dismissal of that claim with prejudice is appropriate if a court finds the plaintiff has pleaded his or her best case. *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). When a plaintiff "has had several opportunities to state a cognizable claim and he has pled his best case, the court need not authorize another amendment." *Fregia v. Bright*, 750 F. App'x 296, 299 (5th Cir. 2018) (citing *United States ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 387 (5th Cir. 2003)). *See also Jacquez v. Procunier*, 801 F.2d 789, 792-93 (5th Cir. 1986) (affirming dismissal with prejudice for failure to state a claim when plaintiff did not file a supplemental complaint but did file an extensive response to the defendants' motion to dismiss). Whether to grant leave to amend is within the Court's sound discretion. *U.S. ex rel. Willard*, 336 F.3d at 387.

Defendant first filed a motion to dismiss on September 10, 2021, identifying pleading deficiencies in Plaintiff's complaint. ECF No. 18. After a Court order noted Plaintiff's failure to respond to the motion, Plaintiff filed an amended complaint. ECF No. 23. Defendant's second motion to dismiss (the pending motion) also identified pleading deficiencies in Plaintiff's amended complaint. In her response, Plaintiff stood on the allegations in the amended complaint for some

of her claims and added facts or provided clarification for others. While she requested leave to amend in her response (ECF No. 28), Plaintiff did not file a proposed amended complaint or otherwise advise the Court what additional facts would nudge her claims from conceivable to plausible. Accordingly, with respect to the claims dismissed by this Memorandum Opinion and Order, the Court finds Plaintiff has pled her best case and the claims dismissed shall be dismissed with prejudice.

## V. CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART and DENIES IN PART** Defendant's motion to dismiss (ECF No. 25). Plaintiff's race and national origin discrimination claims and her retaliation claim shall proceed. All other claims are dismissed with prejudice.

**It is so ORDERED this 5th day of January 2022.**

**JASON PULLIAM
UNITED STATES DISTRICT JUDGE**